UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 11539 JLT

| | |
|---|---|
| WALTER STICKLE, ANTHONY CALIENDO, JOHN PITINGOLO, and DANIEL FISHER, <br> Plaintiffs <br><br> v. <br><br> ARTHUR ORFANOS, <br> Defendant | ) ) ) ) ) ) ) ) ) ) ) ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Defendant opposes Plaintiffs' Motion for Preliminary Injunction. Defendant created the concept behind the current Pink Voyd band, and created the original musical group forming the foundation for the Pink Voyd band, The Mood. Pink Voyd is The Mood, and Defendant founded The Mood in 1982 to play tribute to Pink Floyd. Plaintiffs are merely palming off of Defendant in their violation of Defendant's intellectual property rights.

Defendant has counterclaimed against Plaintiffs for their violation of the Lanham Act, the Massachusetts Protection of Trademarks Act, M.G.L. c. 93A, and common laws against unfair competition, and other. Plaintiffs have also libeled Defendant, and committed misrepresentations to the Defendant's (and public's) detriment. Because the Plaintiffs cannot substantiate their claims, cannot meet the requisite burden of proof,

cannot demonstrate a likelihood of success on the merits, and do not stand to be irreparably harmed, no injunctive relief is available.

## STANDARD OF REVIEW

In order to be entitled to a preliminary injunction, a plaintiff must satisfy four criteria, "(1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs and harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corporation. 799 F. 2d 6, 12 (1stCir. 1986).

Furthermore, the First Circuit has adopted a "sliding scale" approach to the requirements: when the likelihood of success on the merits is great, the showing of the other factors is somewhat less. EEIC v. Astra USA, Inc., 94 F. 3d 738, 743 (1st Cir. 1996). This is particularly true in the trademark context where "the key issue is the likelihood of success on the merits because the other decisions will flow from that ruling." Keds Corp. v. Renee Int'l Trading Corp., 888 F. 2d 215, 220 (1st Cir. 1989). Accordingly, the irreparable injury requirement is satisfied when the plaintiffs demonstrates that "the defendant is wrongfully trading on the plaintiff's reputation." Camel Hair, 799 F.2d at 14. "The plaintiff need only show a likelihood of confusion in order to be entitled to equitable relief." Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 498, N.E.2d 1044 (1986).

## ARGUMENTS

### 1. The Plaintiffs are Not Likely to Succeed on the Merits of Their Claims

The Plaintiffs are not likely to succeed in their claims against the defendant for violating their right to protection of their unregistered trademark under the Lanham Act, 15 U.S.C. §1125. Section 1125(a) of Title 15 prohibits any person from using:

> in connection with any goods or services, ... any word, term, name, symbol, or device, or any combination thereof, ...which... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

The First Circuit in Boston Beer Company v. Slesar Bros. Brewing Co., Inc, 9 F.3d 175, 180 (1st Cir. 1993) identified a two-step process for determining violations of section 1125(a). The first step is a determination that the unregistered mark qualifies for protection. Id. The general principles used to determine which marks qualify for protection under § 1125(a) are the same as those principles used to qualify a mark for registration under Section 2 of the Lanham Act. Id. The second step is whether the allegedly infringing mark of the defendant is likely to cause consumer confusion. Id.

Initially, trademark and service mark rights are based upon prior use, allowing the person who first uses the mark in connection with a particular line of business greater right than a junior user. Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 D.2d 812, 815 (1st Cir. 1987). Further a mark qualifies for trademark protection when it is being used or displayed in the sale or advertising of services and the services are rendered in more than one State. 15 U.S.C. § 1127,

A mark is inherently distinctive when it's "intrinsic nature serves to identify a

particular source." <u>Wal-Mart Stores, Inc. v. Samara Bros.</u>, 529 U.S. 205, 210-211 (2000). Word marks are inherently distinctive when arbitrary ("Camel" cigarettes), fanciful ("Kodak" film), or suggestive ("Tide" laundry detergent). <u>Id.</u> If neither arbitrary, fanciful, nor suggestive, then a mark acquires distinctiveness when it develops a secondary meaning. <u>Id.</u>

Pink Voyd is The Mood, Defendant's original creation to pay tribute to Pink Floyd. Defendant founded The Mood in 1982, and began discussing his intellectual property concept with certain of the Defendant's in 1998. *See Defendant's Affidavit, attached hereto and incorporated herein.* Defendant trademarked The Mood in 1999, and also registered related domain names. Later, in 2000 – 2001, the band The Mood discussed changing the band name and Defendant consequently registered related domain names. Defendant applied to USPTO to register Pink Voyd in 2002, and also in 2004 to use same; he was informed in 2004 he was the owner of the Pink Voyd mark. <u>Id.</u> Defendant's Counterclaims against Plaintiffs reserve and establish his claims for same.

2. **The Defendant did not violate the Lanham Act, 15 U.S.C. §1125(d)**

The Plaintiffs are not likely to succeed on the merits of their claim against the defendant for his continuing violations of 15 U.S.C. §1125(d). Under Section 1125(d), a person who is not the owner of a mark is prohibited from the following.

> [W]ithout regard to the good or services of the parties...[he] has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and...registers, traffics in, or uses a domain name that...in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark...

In determining the bad faith intent of a person, a court should consider the many factors outlined in the Code. Those factors include the following:

    (I)    the trademark or other intellectual property rights of the person, if any, in the domain name;

    (II)    the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

    (III)    the person's prior use, if any of the domain name in connection with the bona fide offering of any goods or services;...

    (V)    the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by causing a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

    (VI)    the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;...

    (VIII)    the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to the marks of others that are distinctive at the time of registration of

such domain names...without regard to the goods or services of the parties;

Defendant is not acting in bad faith. In fact, Defendant asserts Plaintiffs are acting in bad faith. *See Defendant's Affidavit, attached hereto and incorporated herein.* Since the Defendant is the rightful user of the mark "Pink Voyd", the defendant is not liable under §1125(d). The defendant initially registered www.pinkvoyd.com on or about May 23, 2001. Under duress, he transferred same to Plaintiff. He nonetheless applied for further protection and ownership rights in 2002 and in 2004, and is now forced to, against his wishes, claim same in the instant lawsuit. His only claim is to his rightful ownership of his creation; no more, and no less now that Plaintiffs have forced him – again – into this trying position.

3. **The Plaintiffs will not be Irreparably Harmed if a Preliminary Injunction is not Granted**

The plaintiffs will not be irreparably harmed if the defendant is not enjoined from his allegedly wrongful and malicious conduct. Because at all relevant times Defendant has acted in good faith and asserts Plaintiffs have at all relevant times acted in bad faith, any purported harm against Plaintiffs is nonexistent. Defendant attempted to resolve his claims outside of Court on two different instances, at least, to no avail. Plaintiffs have known of Defendant's claims since they began playing together as The Mood in the late 1990's through 2001 at which time Defendant was kicked out of the band. Additionally, there is no irreparable harm to Plaintiffs under federal or state law, but there exists irreparable harm to Defendant through Plaintiff's continued use of Defendant's

intellectual property. Defendant has claimed same in his counterclaims against Plaintiffs. The forum for such determinations is a trial, not a Motion Hearing or through injunctive relief.

## CONCLUSION

The plaintiffs cannot and have not established that they are entitled to a preliminary injunction. They have not and cannot establish a likelihood of success on their claims under 15 U.S.C §1125(a) and (d), the Massachusetts Trademark Protection Statute, and the common law tort of intentional interference with contractual relations. The plaintiffs have also failed to establish that they will suffer irreparable harm if an injunction in not issued. Accordingly, the Defendant respectfully requests Plaintiffs' Motion for Preliminary Injunction be denied.

In further support hereof, please see Defendant's Affidavit attached hereto and incorporated herein as well as all Exhibits attached thereto.

Respectfully submitted,

Defendant
By his Attorney
The Law Offices of Mark E. Pelosky, P.C.

Mark E. Pelosky, Esq.
The Law Offices of Mark E. Pelosky, P.C.
375 Broadway Suite 207
Chelsea, MA 02150
617 884 8100

August 23, 2004